#30495-a-SRJ
**2024 S.D. 45**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

| | |
|---|---|
| PRESERVE FRENCH CREEK, INC., | Plaintiff and Appellant, |
| v. | |
| COUNTY OF CUSTER, SOUTH DAKOTA, CITY OF CUSTER, SOUTH DAKOTA, BOARD OF COMMISSIONERS OF CUSTER COUNTY, SOUTH DAKOTA, CITY COUNCIL OF THE CITY OF CUSTER, SOUTH DAKOTA, TRACY KELLEY, AND TERRI WILLIAMS, | Defendants and Appellees. |

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
CUSTER COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE STACY L. VINBERG WICKRE
Judge

\* \* \* \*

| | |
|---|---|
| STEVEN C. BEARDSLEY CONOR P. CASEY of Beardsley, Jensen & Lee, Prof. LLC Rapid City, South Dakota | Attorneys for plaintiff and appellant. |
| | |
| JACOB A. STEWART STACY HEGGE RICHARD M. WILLIAMS of Gunderson, Palmer, Nelson & Ashmore, LLP Rapid City, South Dakota | Attorneys for defendants and appellees. |

\* \* \* \*

ARGUED
APRIL 25, 2024
OPINION FILED **07/24/24**

#30495

JENSEN, Chief Justice

[¶1.]     The City of Custer made application to the South Dakota Department of Agriculture and Natural Resources (DANR) for a permit authorizing the City to discharge wastewater into French Creek as a part of an upgrade of its wastewater treatment facility (Facility).  Preserve French Creek, Inc. (Preserve) was formed by a group of citizens from Custer County, South Dakota, who objected to the discharge of wastewater into French Creek.  Two years after issuance of the DANR permit, a Custer County ordinance was passed by citizen initiative, declaring the discharge of treated water into French Creek to be a nuisance.  Preserve demanded that, pursuant to the newly enacted ordinance, the City cease construction of the Facility.  When the City did not respond, Preserve petitioned for mandamus relief, which the circuit court denied.  French Creek appeals.  We affirm.

**Factual and Procedural Background**

[¶2.]     The City operates the Facility that currently discharges into Flynn Creek.  In 2020, the City began the process of upgrading the Facility by repairing existing treatment components and building additional treatment capacity to meet future surface water quality needs.  In the design for the upgraded Facility, the plan called for treated wastewater to be discharged into French Creek instead of Flynn Creek.  In November 2020, the City applied for a permit from the DANR, as required by State law, to allow discharge of the treated wastewater into French Creek.  By publication on December 2, 2020, in the Custer County Chronicle, the City gave public notice that it was seeking a Surface Water Discharge Permit (the

Permit) from the DANR.[1]  The notice provided that anyone desiring to comment on the Permit must do so in writing within the specified 30-day window.  The notice also stated that if no objections to the Permit were received during that period, the DANR would issue a final determination.  The City maintains, and Preserve does not dispute, that there were no objections to the issuance of the Permit within the allotted time.

[¶3.]     The Permit was issued by the DANR on January 13, 2021, "[i]n compliance with the provisions of the South Dakota Water Pollution Control Act and the [ARSD], Article 74:52[.]"  The Permit states that upon completion of the Facility, "the [C]ity will be authorized under this permit to discharge to French Creek from its" upgraded Facility.  The effective date of the permit is from April 1, 2021, to March 31, 2026.

[¶4.]     Two years after issuance of the Permit, an initiated county ordinance (the Ordinance) was put on the ballot for the June 2023 election.  The Ordinance was passed, and it declares the discharge of treated water into French Creek a nuisance:

---

1.     Preserve argues the notice was defective, claiming actual notice, not publication notice, was required.  Since it does not appear on the record before us that Preserve raised the notice issue below, we will not consider it. *See State v. Krouse*, 2022 S.D. 54, 980 N.W.2d 237, 251 (It is well-settled that "[w]hen an issue is raised for the first time on appeal this Court need not consider it.") (citing *LP6 Claimants, LLC v. S.D. Dep't of Tourism and State Dev.*, 2020 S.D. 38, ¶ 24, 945 N.W.2d 911, 918).  Moreover, Preserve acknowledges that it did not challenge the Permit or raise the issue of notice before the DANR.  "It is a settled rule of judicial administration that 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'  Failure to exhaust remedies is a jurisdictional defect." *Reynolds v. Douglas Sch. Dist. No. 51-1*, 2004 S.D. 129, ¶ 10, 690 N.W.2d 655, 657.

> The discharge of any treated water from the Custer City, South Dakota sewage treatment plant into French Creek or its tributaries, within the boundaries of Custer County, South Dakota, is a nuisance.

Custer County (the County) canvassed the election and certified the passage of the Ordinance. The day after the election, Preserve's counsel sent a letter to the City requesting that it order construction of the Facility to cease.

[¶5.] Thereafter, Preserve filed a petition for writ of mandamus, requesting that the circuit court issue a writ to "force the County and City to fulfill their duty and abate the declared nuisance." In response to the petition for writ of mandamus, the City and County argued that the Ordinance conflicted with state law, preventing enforcement of it, that mandamus relief was unavailable for discretionary functions such as enforcement of an ordinance, and that mandamus relief was unavailable because Preserve had a remedy at law. Preserve argued the City and County were estopped from arguing the Ordinance was invalid or unenforceable because the County certified that the Ordinance passed and had not raised those concerns prior to the election and certification of the election.

[¶6.] After a hearing on the petition, the circuit court issued its memorandum opinion and order and denied the writ of mandamus. The circuit court concluded the Ordinance conflicted with SDCL 21-10-2, and was therefore, unenforceable. SDCL 21-10-2 provides: "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." The circuit court explained that the Ordinance, "declaring that the discharge into French Creek is a nuisance directly conflicts with the [DANR's] permit issuance pursuant to State law." As such, the circuit court held the "City of Custer has no duty to enforce a

local ordinance that conflicts with State law, as it is unenforceable. Therefore, Plaintiff is not entitled to a writ of mandamus." The circuit court rejected Preserve's estoppel argument and also found mandamus relief inapplicable because there was "no clear duty to act" because the City and County had "no legal obligation to enforce a local ordinance that conflicts with" state law. Preserve appeals and raises two issues:

1. Whether the circuit court erred in concluding the Ordinance conflicted with state law and was unenforceable.

2. Whether the circuit court erred in concluding the City and County were not estopped from asserting the Ordinance was unenforceable.

**Standard of Review**

[¶7.] "Circuit courts possess discretion in deciding whether to grant a writ of mandamus; thus, the appropriate standard of review on appeal is abuse of discretion." *Asper v. Nelson*, 2017 S.D. 29, ¶ 11, 896 N.W.2d 665, 668 (quoting *Willoughby v. Grim*, 1998 S.D. 68, ¶ 6, 581 N.W.2d 165, 167).

**Analysis**

[¶8.] "The granting of a writ of mandamus is not a matter of absolute right, but is vested in the sound discretion of the court; and, where there is reason to doubt the necessity or propriety of issuing it, it should be refused." *Id.* (quoting *Anderson v. City of Sioux Falls*, 384 N.W.2d 666, 668 (S.D. 1986)). "Mandamus is a potent, but precise remedy. Its power lies in its expediency; its precision in its narrow application. It commands the fulfillment of an existing legal duty, but creates no duty itself, and acts upon no doubtful or unsettled right." *Okerson v.*

*Common Council of City of Hot Springs*, 2009 S.D. 30, ¶ 6, 767 N.W.2d 531, 533

(quoting *Sorrels v. Queen of Peace Hosp.*, 1998 S.D. 12, ¶ 6, 575 N.W.2d 240, 242).

"To prevail in seeking a writ of mandamus, the petitioner must have a clear legal

right to performance of the specific duty sought to be compelled and the respondent

must have a definite legal obligation to perform that duty." *Id.* (quoting *Sorrels*,

1998 S.D. 12, ¶ 6, 575 N.W.2d at 242). Mandamus "will not be granted when it

would be unavailing." *Asper*, 2017 S.D. 29, ¶ 11, 896 N.W.2d at 668 (citation

omitted).

[¶9.]     The County has a duty to administer and enforce its own ordinances.

*See Jensen v. Lincoln Cnty. Bd. of Comm'rs*, 2006 S.D. 61, ¶ 11, 718 N.W.2d 606,

611 (citing SDCL 11-2-25) ("The board [of county commissioners] shall provide for

the enforcement of the provisions of this chapter and of ordinances, resolutions, and

regulations made thereunder." (alteration in original)). This presupposes, however,

that the ordinance sought to be enforced is valid. *See, e.g.*, *Heine Farms v. Yankton

Cnty. ex rel. Cnty. Comm'rs*, 2002 S.D. 88, ¶ 16, 649 N.W.2d 597, 601 ("It is

fundamental that an ordinance or resolution proposed by the electors of a

municipality under the initiative law must be within the power of the municipality

to enact or adopt." (quoting *Custer City v. Robinson*, 79 S.D. 91, 93, 108 N.W.2d 211,

212 (1961))). As the Court has previously held, a county "may not enact an

ordinance that conflicts with state law." *Tibbs v. Moody Cnty. Bd. of Comm'rs*, 2014

S.D. 44, ¶ 25, 851 N.W.2d 208, 217 (citing *Rantapaa v. Black Hills Chair Lift Co.*,

2001 S.D. 111, ¶ 23, 633 N.W.2d 196, 203) (affirming denial writ of certiorari where

ordinance was not in conflict with state law); *City of Onida v. Brandt*, 2021 S.D. 27, ¶ 14, 959 N.W.2d 297, 301).

### *Enforceability of the Ordinance*

[¶10.]     When an ordinance conflicts with state law, "state law preempts or abrogates the conflicting local law." *Rantapaa*, 2001 S.D. 111, ¶ 23, 633 N.W.2d at 203.  In *Rantapaa*, the Court noted the three ways in which a local ordinance can conflict with state law:

> First, an ordinance may prohibit an act which is forbidden by state law and, in that event, the ordinance is void to the extent it duplicates state law.  *Second, a conflict may exist between state law and an ordinance because one prohibits what the other allows.*  And, third, state law may occupy a particular field to the exclusion of all local regulation.

*Id.* (cleaned up) (emphasis added).  In denying the petition for mandamus relief, the circuit court found there was a conflict between the Ordinance—which declares the Facility's discharge of wastewater into French Creek a nuisance—and SDCL 21-10-2—which provides that "[n]othing which is done or maintained under the express authority of a state can be deemed a nuisance."  As a result, the circuit court held the Ordinance was unenforceable.  We agree.

[¶11.]     Municipalities are authorized by SDCL 9-48-2(1) to "[e]stablish, construct, and maintain main, trunk, sanitary, storm, and service sewers, and septic or *sewage treatment plants*, drains, and manholes either within its corporate limits or within ten miles of its corporate limits[.]"  (Emphasis added.)  Moreover, SDCL chapter 34A-2 regulates water pollution control, which authorizes the DANR to "promulgate rules . . . for permits to discharge sewage, industrial wastes, or other wastes into state waters," including the necessity of a public hearing before issuing

a permit to discharge waste into surface water. *See* SDCL 34A-2-28; SDCL 34A-2-35; SDCL 34A-2-36; *see also* SDCL 34A-2-31 ("The [DANR] secretary shall issue, suspend, revoke, modify, or deny permits to discharge sewage, industrial wastes, or other wastes to state waters, consistent with provisions of this chapter and with rules promulgated by the board pursuant to chapter 1-26.").

[¶12.] Pursuant to state law, the City endeavored to upgrade its Facility, which necessarily involved obtaining a permit from the DANR for the discharge of treated wastewater. In upgrading its Facility, the City obtained a permit, which allows for drainage into French Creek. The City's actions with regard to the discharge of treated wastewater from the Facility are expressly authorized under state law through the Permit granted by the DANR. The Court has determined that similarly authorized actions by a city cannot constitute a nuisance, relying on SDCL 21-10-2.

[¶13.] In *Hedel-Ostrowski v. City of Spearfish*, 2004 S.D. 55, ¶ 13, 679 N.W.2d 491, 497, the plaintiff was injured when a city park swing broke. She asserted a nuisance claim against the city, which the circuit court dismissed. This Court affirmed, concluding that pursuant to SDCL 21-10-2, "South Dakota law specifically exempts statutorily authorized actions or maintenance from being considered a nuisance." The Court noted that under SDCL 9-38-1, the city was "authorized to 'establish, improve, maintain, and regulate public parks, public squares, parkways, boulevards, swimming pools, camping, and other facilities in connection therewith within or without the municipality[.]'" *Id.* (quoting SDCL 9-38-1). The Court explained:

> It is this authority under which the City established and maintained the swing of which Hedel–Ostrowski complains. The trial court reasoned that because the park was authorized by statute that neither the park nor its equipment could be deemed a nuisance. We agree. The legislature exempts from the definition of nuisance those things done or maintained under statutory authority.
>
> * * *
>
> The legislature authorized cities to establish public parks for the benefit of the public. Swings and playground equipment are "facilities in connection therewith." SDCL 9-38-1.

*Id.* Similarly, in *Loesch v. City of Huron*, 2006 S.D. 93, ¶ 13, 723 N.W.2d 694, 698, this Court held, "[b]ecause the City was repairing and maintaining the road pursuant to a statutory obligation," the City's act could not constitute a nuisance under SDCL 21-10-2. *See also Krsnak v. Brant Lake Sanitary Dist.*, 2018 S.D. 85, ¶ 32, 921 N.W.2d 698, 705 ("Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." (quoting SDCL 21-10-2)).

[¶14.] Here, the City's actions in constructing, establishing, operating, and maintaining the Facility and obtaining a permit to discharge wastewater into French Creek were likewise done pursuant to express statutory authority. Thus, pursuant to SDCL 21-10-2, the City's actions cannot constitute a nuisance. The Ordinance plainly conflicts with state law, as it seeks to declare the City's actions a nuisance when state law declares those actions are not a nuisance. Because the Ordinance attempts to prohibit what state law permits, the Ordinance is preempted by state law and invalid. *See Rantapaa*, 2001 S.D. 111, ¶ 22, 633 N.W.2d at 203. Accordingly, Preserve has no clear legal right to enforcement of the invalid

Ordinance, and the City and County have no definite legal obligation to enforce it. *See Okerson*, 2009 S.D. 30, ¶ 6, 767 N.W.2d at 533.

***Estoppel***

[¶15.] Preserve argues the City and County "should be estopped from arguing that the Local Ordinance they canvassed and certified are preempted by State law and unenforceable." Preserve points out that the "County canvassed the election returns and certified that the nuisance ordinance not only passed but passed appropriately."

[¶16.] The quasi-estoppel theory Preserve relies on is "an equitable remedy, applicable when a party maintains a position inconsistent with a position previously acquiesced in, or of which the party accepted a benefit, and these inconsistent positions are to another's disadvantage." *Bailey v. Duling*, 2013 S.D. 15, ¶ 31, 827 N.W.2d 351, 362 (citation omitted). The Court in *Bailey* explained that the doctrine "has its basis in election, ratification, affirmance, acquiescence, or acceptance of the benefits[.]" *Id.* (alteration in original) (citation omitted). "Intended to prevent parties from benefiting by taking two clearly inconsistent positions to avoid certain obligations or effects, the doctrine is sometimes used interchangeably with judicial and equitable estoppel, but it is more closely akin to judicial estoppel." *Id.* (citation omitted).

[¶17.] Preserve argues the City and County are estopped from asserting the Ordinance is unenforceable, claiming it "relied upon the advice of its elected County Commissioners to employ resources, time, money, and manpower to place the nuisance ordinance on the ballot for voting. Then, in reliance that the Local

Ordinance was on the ballot and valid, [Preserve] voted to enact the Local

Ordinance."

[¶18.]    Estoppel is not applicable here. The County took no position on the

validity of the Ordinance by placing the Ordinance on the ballot or by canvassing

the vote. The County was statutorily required to do both. SDCL 7-18A-13 provides

that "[i]f a petition to initiate is filed with the auditor, the auditor shall present it to

the board of county commissioners at its next regular or special meeting. The board

*shall* enact the proposed ordinance or resolution and *shall* submit it to a vote of the

voters in the manner prescribed for a referendum within sixty days after the final

enactment." (Emphasis added); SDCL 12-20-36 ("Within six calendar days after the

close of any election, the officer in charge of the election . . . *shall* make the canvass

of votes." (Emphasis added)); *see also Heine Farms*, 2002 S.D. 88, ¶ 13, 649 N.W.2d

at 601 (noting the county has an obligation to submit an initiated ordinance for a

public vote). The County's fulfillment of its statutory obligations for the citizen-

initiated Ordinance is not contrary to its position that the Ordinance is preempted

by state law.

[¶19.]    Further, Preserve's argument has no application to the City, which

was not involved in the process for the citizen-initiated Ordinance. According to

Preserve's own allegations, it was the County, not the City, that placed the

Ordinance on the ballot and canvassed the vote. Therefore, under Preserve's own

analysis, the City did not take an inconsistent position, and it is not estopped from asserting the Ordinance is invalid and unenforceable.[2]

[¶20.]    Affirmed.

[¶21.]    KERN, SALTER, DEVANEY, and MYREN, Justices, concur.

---

2.    The circuit court also held that mandamus relief was unavailable for discretionary functions such as enforcement of an ordinance and because Preserve had a remedy at law.  The City and County argue this alternative ruling was correct.  Preserve has not challenged this ruling in its brief to this Court.  Because we find the Ordinance is not enforceable and the writ of mandamus was properly denied on this basis, we need not consider this alternative ruling.